J-S09028-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL SOTO | : | |
| | : | |
| Appellant | : | No. 1909 EDA 2025 |

Appeal from the Judgment of Sentence Entered June 8, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008855-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL SOTO | : | |
| | : | |
| Appellant | : | No. 1910 EDA 2025 |

Appeal from the Judgment of Sentence Entered June 8, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008856-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL SOTO | : | |
| | : | |
| Appellant | : | No. 1911 EDA 2025 |

Appeal from the Judgment of Sentence Entered June 8, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008857-2021

J-S09028-26

BEFORE:   MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                    **FILED APRIL 14, 2026**

Daniel Soto ("Soto") appeals from the judgment of sentences imposed following his guilty pleas to one count of third degree-murder, two counts of simple assault, and one count each of possession of firearm prohibited and firearms not to be carried without a license.[1]  We affirm.

The trial court summarized the factual history as follows:

> On April 18, 2020, Soto got into a heated discussion with the decedent, Ruben Alvarez [(the "Decedent")], who was with two other individuals, over the earlier shooting of a gun into the air on the block where Soto's family lived.  The discussion was over, with [the Decedent] and his companions walking away when Soto shot at the three men, shooting the [D]ecedent in the back[, and injuring another, who survived].  Based on the video of the murder as well as the fired cartridge casings, Soto fired his gun at the backs of the three men at least five times.  After committing the murder, Soto ordered another person to clean up the [fired cartridge casings] and handed the gun to a third individual to hide.  All of this is undisputed as the murder was captured on video and the [D]ecedent's friend, who was with him at his murder was ready, willing and able to testify at Soto's trial.

Trial Court Opinion, 12/23/24, at 3.[2]  The Decedent died as a result of this gunshot.

The Commonwealth charged Soto with, *inter alia*, murder, simple assault, and related firearms offenses on one docket for shooting and killing

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2502(c), 2701(a), 6105(a)(1), 6106(a)(1).

[2] For ease of review, when quoting the trial court's opinion, we have changed the trial court's references to "Defendant" and "defendant" to "Soto."

- 2 -

the Decedent. On that same date, the Commonwealth charged Soto with aggravated assault[3] and simple assault at two other dockets, for shooting at the two men who were with the Decedent and survived.

On February 23, 2023, Soto entered open guilty pleas[4] to third degree murder, possession of a firearm prohibited and firearms not to be carried without a license and two counts of simple assault in exchange for the dismissal of the remaining criminal charges. During the hearing, Soto agreed that "there is no agreement as to [his] sentence and that [the trial court] would determine [his] sentence." N.T., 2/23/23, at 25. The trial court scheduled a sentencing hearing and ordered a pre-sentence investigation ("PSI") report.

On June 8, 2023, the trial court conducted a sentencing hearing. At that time, the offense gravity score ("OGS") for third degree murder was fourteen, and Soto's prior record score ("PRS") was determined as a repeat felony offender ("RFEL"). *See* N.T., 6/8/23, at 3; *see also* 204 Pa. Code § 303.15. The standard guideline range for third-degree murder, applying the deadly

_____

[3] *See* 18 Pa.C.S.A. §§ 2702(a)(1).

[4] "In an open plea agreement, there is an agreement as to the charges to be brought, but no agreement at all to restrict the prosecution's right to seek the maximum sentences applicable to those charges." *Commonwealth v. White*, 787 A.2d 1088, 1089 n.1 (Pa. Super. 2001).

weapon used enhancement ("DWE"),[5] based on the OGS and Sotos's PRS, was eighteen and one-half years to the statutory limit,[6] which was forty years, plus or minus twelve months for aggravating or mitigating circumstances. **See** Trial Court Opinion, 12/23/24, at 5; **see also** 204 Pa. Code § 303.17(b). For simple assault, the OGS was three and the guidelines recommended eighteen to twenty-four months, plus or minus three months. **See** N.T., 6/8/23, at 8-9; **see also** 204 Pa. Code § 303.17(b). For possession of firearm prohibited, the OGS was 11 and the guidelines recommended one hundred and two to one hundred and twenty months, plus or minus twelve months. **See** N.T., 6/8/23, at 8-9; **see also** 204 Pa. Code § 303.17(b). For carrying a firearm without a license, the OGS was 9 and the guidelines recommended seventy-eight to ninety months, plus or minus 12 months. **See** N.T., 6/8/23, at 8-9; **see also** 204 Pa. Code § 303.17(b).

The Commonwealth presented victim impact statements from the Decedent's brother, aunt, and mother, describing their ongoing trauma and grief surrounding the Decedent's death. The Decedent's mother explained that Decedent's infant daughter would grow up without memories of her father.

---

[5] **See** 204 Pa.Code § 303.10(a)(2) (providing that "when the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b))").

[6] **See** 18 Pa.C.S.A. § 1102(d) (providing that "a person who has been convicted of murder of the third degree . . . shall be sentenced to a term [of] not more than 40 years").

The trial court heard mitigation testimony from a family friend of Soto's, who had known him approximately ten years. The witness testified that Soto had been a consistent source of emotional and practical support to her and her children over many years. She explained that Soto helped care for her daughter, provided housing during a period of homelessness, and supported her through significant personal hardships, including the deaths of family members and a suicide attempt. The witness further stated that her children viewed Soto as a father figure and role model, and she described him as a "good person" who was always available to help others. N.T., 6/8/23, at 31.

The trial court also received detailed evidence regarding Soto's life history from his defense counsel. At age twelve, Soto lived in a single-parent household following his father's incarceration. At age nineteen, a court sentenced Soto to twenty years' imprisonment. After serving two decades in prison, Soto married and became the father of three young children. Soto exercised his right of allocution, expressing remorse and apologizing to the Decedent's family.

Before imposing Soto's sentence, the trial court noted:

[The court] reviewed the [PSI] in this matter, the mental health. The court listened very carefully to the arguments of counsel and the victim impact testimony presented to this court, as well as testimony on behalf of [Soto] and [Soto's] allocution. . . .

* * * *

[The court] read your report. Twenty years you spent in jail. You were [nineteen, twenty] years old. You spent [twenty] years in jail. You are [forty-five] at this point. [The Decedent was

- 5 -

twenty-two]. You know you did something when you were [nineteen] that caused you to go to jail for [twenty] years of your life and you finally get out and make a life for yourself and this young man, whatever they were doing, they shot off a gun, whatever they were doing, clearly you were the age of a father to that young man. You shoot him in the back when he walks away.

* * * *

This court does take into consideration that [Soto] pled guilty. . . . There is no self-defense in this case. There is no voluntary manslaughter in this case but [the court does] appreciate that [Soto] has expressed remorse. [Soto] did plead guilty.

N.T., 6/8/23, at 42-46 (unnecessary capitalization omitted).

At the conclusion of the hearing, the trial court imposed a sentence of twenty to forty years' incarceration for third-degree murder; two to four years' incarceration for possession of firearm prohibited; one to two years' incarceration for carrying a firearm without a license; and terms of one to two years' incarceration for each of the two counts of simple assault. The trial court ordered all sentences to run consecutively. In sum, the trial court imposed an aggregate sentence of twenty-five to fifty years' incarceration.

On June 20, 2023, Soto filed a post-sentence motion that sought reconsideration of the consecutive nature of the sentences imposed for his convictions. Specifically, Soto argued:

[The trial court] purported to sentence within the sentencing guidelines but applied the guidelines erroneously; sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or sentenced outside the sentencing guidelines and the sentence is unreasonable.

> [Further, Soto] was sentenced consecutively on every single charge to which he pled guilty, including the statutory maximum for murder of the third degree.
>
> [Soto] was remorseful and sincerely expressed his remorse at the time of sentencing.

Post-Sentence Motion, 6/20/23, at unnumbered 2 (unnecessary capitalization omitted). Soto further averred that the Decedent was "armed with a firearm when the [Decedent and others involved] approached [Soto], and entered into the initial verbal altercation that led to the murder." ***Id***.

The trial court denied the motion, and these timely appeals ultimately followed.[7] Both he and the trial court have complied with Pa.R.A.P. 1925.

Soto raises one issue for our review:

> Whether the [trial c]ourt erred in ordering a sentence . . . for [third degree murder of twenty to forty years, two to four years for carrying a firearm without a license, and one to two years for each count of simple assault, with] all sentences to run consecutive for a total aggregate sentence of twenty-five to fifty . . . years of state incarceration when substantial mitigating circumstances existed including [Soto's] acceptance of responsibility, his remorsefulness and the [Decedent's] wrongful conduct that contributed significantly to provoking the offense behavior?

Soto's Brief at 8.

_____

[7] Soto did not initially file notices of appeal but filed a petition pursuant to the Post Conviction Collateral Relief Act ("PCRA"), seeking reinstatement of his appellate rights *nunc pro tunc*. On May 29, 2024, the PCRA court granted this relief.

Soto then filed counseled notices of appeal on June 30, 2024, which was untimely. This Court directed Soto to show cause why we should not quash the appeals as untimely. Soto did not respond to the rule to show cause. Instead, he withdrew the appeals and filed a second PCRA petition, again seeking reinstatement of his appellate rights *nunc pro tunc*. On July 16, 2025, the PCRA court granted relief.

Soto's sole issue on appeal challenges the discretionary aspects of his sentence.[8]  This Court has explained:

> Challenges to the discretionary aspects of sentence are not appealable as of right.  Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence; and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[A.] § 9781(b), or sentencing norms.  An appellant must satisfy all four requirements.  . . .
>
> [A]n excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question.

*Commonwealth v. Miller*, 275 A.3d 530, 534-35 (Pa. Super. 2022)

(citations and quotation marks omitted).

Although the imposition of consecutive sentences alone does not raise a substantial question, a claim that such sentences result in an excessive

---

[8] "Generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the [trial] court, the legality of the sentence, and the validity of the guilty plea." *Commonwealth v. Morrison*, 173 A.3d 286, 290 (Pa. Super. 2017) (citation omitted).  "Where a defendant pleads guilty without any agreement as to sentence, [however,] the defendant retains the right to petition this Court for allowance of appeal with respect to the discretionary aspects of sentencing." *Commonwealth v. Brown*, 982 A.2d 1017, 1019 (Pa. Super. 2009).

Here, Soto agreed to plead guilty to the aforementioned criminal offenses (or counts) without an agreement as to sentencing.  Therefore, Soto retained the right to petition this Court for allowance of appeal with respect to the discretionary aspects of his sentence.  *See id*.

aggregate term, coupled with an assertion that the court failed to consider mitigating factors, does. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015).

Here, Soto filed a timely notice of appeal, and his brief included a statement of reasons relied upon for allowance of appeal, as required by Rule 2119(f). Additionally, Soto filed timely post-sentence motion in which he preserved certain challenges to the discretionary aspects of his sentence. ***See Miller***, 275 A.3d at 534-35.

In his Rule 2119(f) statement, Soto contends:

> In this case all of the [trial c]ourt's sentences for were guidelines sentences. However, even if a sentence is within the sentencing guidelines, an appellate court shall vacate such sentence and remand the case for resentencing if the case involves circumstances where the application of the guidelines would be clearly unreasonable. Even though a court normally has discretion to impose consecutive sentences, the imposition of consecutive sentences can result in a sentence that is excessive and clearly unreasonable.
>
> [T]he trial court imposed a sentence that is grossly disproportionate to his crime and failed to adequately consider the victims' culpability and . . . Soto's remorse and failed to adequately consider and reasonably apply the sentencing guidelines in the context of the offense in relation to the case. [Soto further] contends these are "plausible" arguments that his sentence is "contrary to the fundamental norms which underlie the sentencing process."

Soto's Brief at 20-21. We conclude that Soto's assertion that the trial court imposed consecutive sentences resulting in a manifestly excessive aggregate sentence, while failing to adequately consider mitigating factors, raises a substantial question. ***See Miller***, 275 A.3d at 534-35; ***see also Caldwell***,

- 9 -

117 A.3d at 770. We therefore grant Soto's petition for allowance of appeal and address the merits of his claim.

Our standard of review of a discretionary sentencing claim is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge and this Court will not disturb a sentence on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Miller**, 275 A.3d 535 (citations and quotation marks omitted).

"When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." **Commonwealth v. Ventura**, 975 A.2d 1128, 1134 (Pa. Super. 2009). "We cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." **Commonwealth v. Macias**, 968 A.2d 773, 778 (Pa. Super. 2009).

It is well-settled that "Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa. Super. 2013); **see also**

42 Pa.C.S.A. § 9721(a) (stating that a trial court may impose a sentence consecutively or concurrently).

Further, "[w]hen a sentencing court has reviewed a [PSI] report, we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." **Commonwealth v. Baker**, 72 A.3d 652, 664 (Pa. Super. 2013).

Soto argues that the trial court abused its discretion following his guilty plea "because the [twenty-five to fifty] year sentence [of] incarceration . . . was manifestly excessive and inflicted too severe a punishment under the circumstances of this case." Soto's Brief at 23. Soto contends that "the trial court failed to adequately [consider] the Decedent's own culpability that put in motion the events that caused his death." **Id**. at 26 (unnecessary capitalization omitted). Soto maintains that "the trial court failed to adequately consider [his] expression of remorse at sentencing." **Id**. at 25 (unnecessary capitalization omitted).

The trial court explained the reasons underlying the imposition of its sentences as follows:

> A [PSI] report and mental health report was prepared for this case, which were studied by the court, along with all the evidence presented. The court considered numerous factors, such as the nature of the crimes, Soto's background, the likelihood of rehabilitation and the need for the public to be protected from this behavior by Soto again. The court specifically studied the mitigation factors presented in the [PSI] report, as well as those presented during the sentencing hearing and in Soto's mental health evaluation. The sentence imposed on [him] considered all of those considerations.

Looking at the guidelines, Soto's calculated prior record score was a [RFEL]. Using the prior record score of RFEL, the guidelines were a minimum sentence of [eighteen and one-half years to the statutory limit, forty years], plus or minus twelve months. Soto was sentenced within the sentencing guidelines. It needs to be noted that Soto had been sentenced to four to ten years' incarceration for an aggravated assault in 1996, four to ten [years] for an attempted murder and aggravated assault five months later in 1996, possessing a firearm prohibited in 2016 and possession with intent to deliver in 2018. [] Soto spent twenty years incarcerated prior to this incident.

On the dockets before this court, the entire matter is captured on video. One can see that Soto waits until [the Decedent] and his friends are walking away before pulling out his gun and shooting the [D]ecedent in the back. None of the individuals leaving were seen possessing or brandishing a weapon of any nature. [The Decedent] and his companions had their backs to Soto when he pulled his weapon and ambushed them, and yet was permitted to plead to third degree murder, instead of proceeding on first degree murder and potentially receiving a life sentence. Additionally, Soto was allowed to plead to simple assault for shooting at [the Decedent's] two friends. That Soto pled guilty was taken into consideration, but so was the callous nature of the murder, along with Soto's history of violence.

. . . This court examined Soto's background, character and rehabilitative needs, and the [PSI] report detailed the relevant information regarding these factors, all of which were considered.

Clearly, the sentence imposed here does not exceed the sentencing guidelines and is not inconsistent with the norms underlying the sentencing process, and the sentence imposed takes into consideration Soto's extensive history, his mental health and rehabilitative needs and the need to protect the public by providing for the opportunity for a long period of counselling and supervision once Soto becomes eligible for parole. As such, Soto's sentence was not excessive or manifestly unreasonable.

. . . Soto shot at two other individuals beside the [D]ecedent and was sentenced separately for each victim. The court reviewed all of the materials submitted, considered all the testimony and arguments of counsel and imposed an appropriate sentence. The undersigned considered Soto's mental health and rehabilitative

needs as well as his history, the need for the protection of the public and the gravity of the offense.

Trial Court Opinion, 12/23/24, at 5-7 (paragraph breaks inserted).

Upon review, we conclude that the trial court did not abuse its discretion in imposing Soto's sentence. *See Miller*, 275 A.3d 535. Soto entered open guilty pleas to third-degree murder and related offenses arising from his conduct that resulted in the twenty-two-year-old Decedent's death, and endangered two additional victims, both of whom survived, although only one was injured. The trial court possessed broad discretion to impose any sentence up to the statutory maximum of forty years for third-degree murder. *See* 18 Pa.C.S.A. § 1102(d). The court imposed a sentence of twenty to forty years' incarceration for third-degree murder, which falls within the standard guideline range based on Soto's OGS and PRS. *See* 204 Pa. Code § 303.17(b).

At sentencing, the trial court confirmed that it had reviewed the PSI report. *See Baker*, 72 A.3d at 664. Accordingly, we presume the trial court was aware of and properly considered all relevant mitigating factors. The record further reflects that the trial court expressly considered Soto's remorse, his guilty plea, his personal history, and the mitigation evidence presented on his behalf. *See* N.T., 6/8/23, at 43–46. The trial court also weighed the gravity of the offense, emphasizing that Soto shot the Decedent in the back as he walked away, as well as Soto's prior violent history and the need to protect the public.

To the extent Soto contends that the trial court failed to consider the Decedent's alleged culpability, the record belies this claim. The trial court expressly found that the Decedent and his companions were walking away and were not brandishing weapons at the time of the shooting, as captured on video, and there was "no self-defense in this case." N.T., 6/8/23, at 45-46. The trial court therefore rejected any suggestion that the circumstances mitigated Soto's conduct.

Finally, although Soto challenges the imposition of consecutive sentences, the decision to impose sentences consecutively rather than concurrently lies within the sound discretion of the trial court and does not, by itself, render a sentence excessive. *See Ventura*, 975 A.2d at 1133–34. Here, the trial court imposed separate sentences for distinct offenses involving multiple victims, and nothing in the record indicates that the aggregate sentence of twenty-five to fifty years' imprisonment is manifestly unreasonable.

Because the trial court considered all relevant factors, imposed a standard-range sentence for the most serious offense, and adequately explained its reasoning on the record, Soto has failed to demonstrate an abuse of discretion. Accordingly, Soto is not entitled to relief.

For all the foregoing reasons, we affirm Soto's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/14/2026